## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Tara Elizabeth Hogue,                        )
                                             )
      Plaintiff,                      )
                                             )    Civil Action No. 6:14-3718-RMG
      vs.                             )
                                             )
Carolyn W. Colvin, Acting Commissioner       )
of Social Security,                          )    **ORDER**
                                             )
      Defendant.                      )
_____ )

      Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner of Social Security denying her claim

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord

with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United

States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and

Recommendation ("R & R") on January 4, 2016, recommending that the Commissioner's

decision be affirmed. (Dkt. No. 23). Plaintiff timely filed objections to the R & R, arguing that

the Commissioner had failed to evaluate the opinions of claimant's treating pain management

physician, Dr. Albert Read Lewin, in accord with the standards of the Treating Physician Rule

and had failed to address and weigh the opinions of physicians who provided care to Plaintiff at

the Medical University of South Carolina (MUSC") Pain Management Clinic. (Dkt. No. 25).

The Commissioner has filed a response arguing that there is substantial evidence to support the

decision of the Commissioner. (Dkt. No. 26). As set forth more fully below, the Court reverses

the decision of the Commissioner and remands the matter to the agency because the

-1-

Administrative Law Judge ("ALJ") failed to address and weigh the opinions of Dr. Lewin and the opinions of other experts in accord with the standards of the Treating Physician Rule or to address at all the opinions of Plaintiff's treating physicians at the MUSC Pain Management Clinic.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the

-2-

administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). Known popularly as the "Treating Physician Rule," the regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, the

-3-

Commissioner pledges that because non-examining physicians who offer opinions "have no examining or treating relationship" with the claimant, "the weight we will give their opinions will depend on the degree which they provide supporting explanations for their opinions" and the "degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." § 404.1527(c)(3).

### Factual Background

Plaintiff presents a complicated and, to her treating physicians, an often confounding picture that included severe back pathology documented on radiographic studies, gross obesity, PTSD from a traumatic childhood, and a history of significant drug abuse that included a period of incarceration.   As one of her treating physicians observed, "she has . . . lots of problems that she comes in with." Tr. 484.  Plaintiff presented to multiple providers with complaints of severe right knee pain in 2008 - 2010 and persistently sought pain medications for this condition, often generating suspicion from her providers that she was engaged in drug seeking behavior.  Tr. 247, 251, 395-96, 532, 534, 560.  In early 2011, Plaintiff began complaining about severe lower back pain following a fall.  Tr. 38-39, 767.  Her treating physicians were understandably suspicious that Plaintiff was drug seeking, particularly after her back examinations were not strikingly abnormal.  Tr. 390, 392, 393, 525, 527.  However, after insisting that she was experiencing almost unbearable pain, she was admitted to MUSC from March 10 - 12, 2011, for pain control, treatment of suspected psychological conditions and a full diagnostic workup, including a lumbar spine MRI.  Tr. 389-91.

In what was perhaps a surprise to her treating physicians, Plaintiff's MRI demonstrated severe degenerative disc disease in the lumbar spine with "significant facet arthropathy at L4-5

-4-

with narrowing of the lateral recesses and displacement of L5 transiting nerve root." Tr. 400,

482. Further, it was noted that the facet degeneration was so significant "she has fluid

collections in there." Tr. 485. Plaintiff's treating attending physician at the MUSC Pain Clinic,

Dr. Steven Gilbert, documented that the abnormalities on the MRI were "quite concordant with

radiating pain of [a] neuropathic nature" described by the patient. Tr. 484. Dr. Gilbert concluded

that Plaintiff's "lumbar degenerative disease is undoubtedly causing some of these problems" but

observed that because of her obesity surgery was not an option. Tr. 485. A plain film of the

lumbar spine performed two months later, in May 2011, confirmed these spinal abnormalities

and suggested the condition might be worsening. Tr. 500.

Plaintiff's treating physicians at MUSC remained concerned about Plaintiff's persistent

requests for pain medications and observed inconsistencies between what she claimed to be

limitations because of pain and her actual physical limitations. For instance, one physician noted

that she came in on crutches but did not need them upon leaving the exam room. He also

observed that she was unable to get out of the chair during the examination but was able to do so

when leaving the room. Tr. 386. She also claimed that she was no longer using cocaine but a

drug test administered during the March 2011 hospitalization was positive for cocaine. Tr. 369,

382.

Plaintiff persistently sought pain medications, often unsuccessfully, from her MUSC

physicians. Because of her addiction history, they were reluctant to prescribe potentially

addictive medications but did administer a series of epidural blocks in an effort to provide her

pain relief. These epidurals provided temporary relief but Plaintiff complained of continuing,

-5-

severe pain. Tr. 477, 478, 480. Plaintiff sought, and at times obtained, short-term prescriptions for pain medications from other providers. Tr. 518-19, 553, 590, 614, 676.

Beginning in the latter part of 2011, Plaintiff became a patient of Dr. Albert Reed Lewin, who undertook an intense regime of epidural injections and potent pain medications in an effort to provide the patient pain relief. Dr. Lewin examined and treated Plaintiff more than 30 times from late 2011 until the time the record ends in this case in 2012. Tr. 638-39, 641, 716, 717-18, 719-20, 724, 725, 727, 728-29, 732, 735, 738, 741, 744, 746, 748, 752, 753, 754-55, 757-58, 759-60, 762, 764-5, 767-68, 774, 775, 777, 778, 779, 781, 782, 783, 784, 785, 787, 789, 793, 796. From Dr. Lewin's many examinations of Plaintiff and observations from the multiple epidural injections, he clearly believed her pain was genuine and severe. In a February 28, 2012 office visit, he described Plaintiff's pain as "bilateral in the lumbar and sacral spine radiating down the left leg." Tr. 767. He noted that the patient's gross obesity (65 inches tall, 290 pounds) complicated her back pathology. *Id.* Plaintiff testified that Dr. Lewin's intensive pain management treatment "[kept] me on my feet." Tr. 40.

Dr. Lewin completed a questionnaire prepared by Plaintiff's counsel on October 25, 2012. He indicated his opinions were based upon the clinical examinations of his patient and her prior MRI. Dr. Lewin opined that if Plaintiff attempted to work, she would have to take frequent and unscheduled breaks to rest and lay down during the normal eight hour day and estimated she would be absent four days per month. He also indicated that Plaintiff was not capable of working on a regular and continuing basis eight hours per day, five days per week. Tr. 698.

Two non-treating and non-examining physicians provided chart reviews of Plaintiff's medical records and offered nearly identical opinions indicating that Plaintiff retained the

-6-

residual functional capacity to perform light work. The first of these opinions, offered by Dr. Mary Lang, was performed by April 21, 2012, and apparently did not include a review of Dr. Lewin's pain management records.[1] Dr. Lang found Plaintiff's complaints of severe pain credible, but thought the claimed inability to bend over or 'hurt[ing] in every position I am in" not to be credible. Tr. 433. Dr. Lang also erroneously stated that "[t]here is no evidence of an inpatient stay for low back pain as reported," when the record contains clear evidence of an admission at MUSC from March 10-12, 2011. Tr. 368-71, 433. Although Dr. Lang never examined Plaintiff, she opined that Plaintiff could lift 10 pounds regularly and 20 pounds occasionally, stand or walk 3-4 hours in an 8 hour work day and sit 6 hours in an 8 hour work day, but provided no specific reference to the medical record to support these conclusions. Tr. 429.

A second opinion by a chart reviewer, Dr. Jim Liao, was prepared on December 8, 2011, and appears to be, in large part, a cut and paste job, copying Dr. Lang's earlier report. Indeed, Dr. Liao report repeats a spelling error made in Dr. Lang's report (misspelling "intractable" as "interactable", Tr. 430, 666), as well as the erroneous statement that Plaintiff had not had an inpatient hospitalization for low back pain. Tr. 433, 669. Perhaps not surprisingly, Dr. Liao had the identical findings of Dr. Lang regarding Plaintiff's ability to lift, sit, walk and stand and, like Dr. Lang, provided no specific support in the medical record for these conclusions. Tr. 429, 665.

An administrative hearing was conducted on November 9, 2012 before an ALJ. Plaintiff described her history of severe, "excruciating" pain that worsened after a fall in early 2011. Tr.

---

[1] Dr. Lang made no reference to these records in her listing of records reviewed and most of Dr. Lewin's care was provided after the completion of Dr. Lang's report. Tr. 435.

-7-

38-40. She described the ability to engage in any type of physical activity for only a short period of time and stated she had been instructed by her physician not to lift more than 5 pounds at a time. Tr. 43-44. A vocational expert also testified and opined that there were positions in the national economy Plaintiff could perform at a sedentary work level, but admitted on cross examination that if she required unscheduled breaks or was absent on average four days per month there would not be jobs in the national economy she could perform. Tr. 48-49.

      The ALJ found that Plaintiff had severe physical and mental impairments but retained the residual functional capacity to perform sedentary work. Tr. 19, 21-25. In reaching this conclusion, the ALJ accorded the opinions of Plaintiff's pain management physician, Dr. Lewin's "no weight." Tr. 25. The ALJ reached that conclusion on the basis that (1) Dr. Lewin had offered his opinions on a form "in which Dr. Lewin merely checked a box next to each question"; and (2) Dr. Lewin failed to "correlate his opinion with any objective evidence." *Id.* Further, the ALJ did not mention at all the opinions of Plaintiff's treating physicians in the MUSC Pain Management Clinic that the patient's complaints of severe, unremitting pain were consistent with the findings on her March 2011 MRI. It is from this decision, ultimately accepted by the Commissioner, that Plaintiff now appeals.

## Discussion

      The dispute in this case concerning Plaintiff's capacity to work is actually quite small. The ALJ found that Plaintiff retained the residual functional capacity for "sedentary work,"

which reflects a severe limitation of Plaintiff's work capacity just above the level of disabled.[2] Plaintiff, on the other hand, asserts that here multi-fold impairments, with particular focus on her severe back and radicular leg pain, render her disabled. Plaintiff argues that the ALJ erred when he failed to weigh the opinions of Dr. Lewin in accord with the standards of the Treating Physician Rule and failed even to make reference to the opinions of Plaintiff's treating physicians at the MUSC Pain Clinic. The Court finds there is considerable merit to both of these arguments.

There is no question that the record contains information that Plaintiff has been incarcerated, has been addicted to narcotic drugs, and has engaged in behaviors which led some of her physicians to believe she was drug seeking and/or exaggerating her physical limitations. To the extent that her drug addiction is a contributing material factor to her disability, this is a disqualifying condition for Social Security disability. 20 C.F.R. § 404.1535. The Commissioner has made no such claim in this case. On the other hand, the fact that Plaintiff has a history of drug addiction does not, in and of itself, disqualify her for Social Security disability if her severe impairments unrelated to drug addiction render her disabled. *Id.* Similarly, the fact that Plaintiff's behavior and criminal history may not make her a particularly credible witness is not the sole issue to consider when determining whether she is disabled. The Commissioner is obligated to consider the full record to determine whether Plaintiff's recognized severe impairments render her disabled, including a proper consideration of the opinions of her treating physicians and other expert opinions in accord with the standards of the Treating Physician Rule.

---

[2] The record is silent whether Plaintiff, who is now over 50 years of age, was deemed disabled upon her 50th birthday by the Social Security Administration pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(g), 201.12. If that has not occurred, the Commissioner on remand is directed to promptly address this issue.

This appeal centers primarily on the failure of the ALJ to evaluate the opinions of Dr. Lewin in accord with the standards of the Treating Physician Rule. The ALJ's analysis leading to the conclusion that the opinions of Plaintiff's principal treating physician for her chronic back and leg pain are entitled to "no weight" is addressed in two brief sentences. The ALJ indicated that he did not like the fact that Dr. Lewin expressed his opinions on a form and allegedly failed to correlate his opinion with objective evidence. The factors required to be considered in weighing the opinions of a treating physician under the Treating Physician Rule (examining history, treating history, supportability, consistency, etc.) went essentially unmentioned other than the erroneous statement that Dr. Lewin failed to correlate his opinions with objective evidence.

The standards of the Treating Physician Rule generally provide considerable deference and weight to a claimant's treating doctors and are certainly a "pro claimant" provision of the regulatory law. In this instance, Dr. Lewin's intense treatment and detailed examining history and the consistency of his opinions regarding Plaintiff's severe impairments were factors which should have been weighed in assessing the opinions of Dr. Lewin, but went unmentioned by the ALJ. Further, Dr. Lewin's opinions expressed in his responses to the October 25, 2012 questionnaire were supported by dozens of his clinical notes and the findings on Plaintiff's lumbar MRI and plain films. The ALJ's almost summary dismissal of Dr. Lewin's opinions without reference to the standards of the Treating Physician Rule is reversible error.

Moreover, the ALJ's decision to accord "some weight" to the opinions of the chart reviews without any consideration of the standards of the Treating Physician Rule was also in error. Indeed, the ALJ's truncated analysis of these opinions failed to mention the names of the

experts or to discuss their actual opinions. There was, further, no effort to weigh and reconcile the opinions of the chart reviewers and Dr. Lewin in accord with the standards of the Treating Physician Rule.

The Court feels compelled to address the summary dismissal of Dr. Lewin's opinions because he offered them on a printed form. It should be noted that the opinions of Dr. Lang and Dr. Liao regarding Plaintiff's capacity to lift, sit, stand and walk were made by placing an "x" on boxes on a printed form without any supporting evidence referenced for these specific opinions. One might reasonably ask why a form is acceptable for the Social Security Administration affiliated doctors to use to defeat a claim of disability but unacceptable for a physician supporting a claimant. Moreover, if the ALJ is unhappy with the use of a form by any expert, the ALJ can follow up and request additional information. It is hardly acceptable under the Treating Physician Rule, where the opinions of the claimant's treating physicians are supposedly valued and respected, to ignore the clearly expressed opinions of the Plaintiff's treating physician because the ALJ is unhappy with the piece of paper on which the opinions are expressed.[3]

Furthermore, the ALJ's claim that Dr. Lewin failed to correlate his opinions with objective evidence is simply untrue. His questionnaire clearly references the MRI and his clinical record, both which provide support for the opinions of Dr. Lewin. As the Factual Summary above sets forth, there was very significant evidence of severe spinal pathology and nerve root impingement on Plaintiff's MRI, and Dr. Lewin's clinical record contains voluminous

---

[3] The Commissioner's argument that Dr. Lewin's opinions are nothing more than "thin checkbox opinions" ignores the fact that the record contains his voluminous treatment records and the highly abnormal radiographic studies upon which he relied in making his treatment decisions. (Dkt. No. 26 at 7).

documentation of his findings, diagnoses and observations.

Plaintiff is also correct that the ALJ failed to reference the findings of the treating physicians at the MUSC Pain Clinic, which, as discussed in the Factual Summary, clearly found correlation between Plaintiff's highly abnormal MRI and her clinical symptoms of pain. The failure to address and weigh these opinions constitutes a separate and independent ground for reversal. Moreover, when the ALJ, on remand, weighs and attempts to reconcile the conflicting opinions of the various experts in accord to the Treating Physician Rule, the fact that two treating pain specialist physicians both gave high credence to the Plaintiff's claim of severe pain may prove to be an important factor in determining Plaintiff's level of impairment.

The Commissioner essentially argues that this Court should ignore the ALJ's deficient application of the Treating Physician Rule and affirm the decision on the basis that there is substantial evidence to support the decision of the Commissioner. (Dkt. No. 26 at 1-4). This argument seriously misapprehends the role of the District Court on review. The District Court is obligated to (1) confirm that the Commissioner adhered to the controlling legal standards; and (2) confirm there is substantial evidence to support the decision of the Commissioner. These obligations are not in the alternative. Where the Commissioner fails to adhere to a mandatory legal standard that has the potential to materially affect the outcome, it is not the role of the District Court to give the Commissioner a pass for the ALJ's failure to apply controlling legal standards. The proper action for the District Court is to remand the case to the agency with the mandate to weigh and reconcile the conflicting evidence in accord with the controlling legal standards. It does not take a great deal of imagination to realize that if a claimant was deemed limited to sedentary work despite the fact that the supporting opinions of her primary treating

-12-

physician were given "no weight" and the opinions of another treating pain medicine physician were ignored, a proper application of the Treating Physician Rule might produce a different result.

## Conclusion

Based upon the foregoing, the Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g), and **REMANDS** the case to the agency for further action consistent with this order.[4]

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
February 3 , 2016

---

[4] On remand, the Commissioner is directed to consider and address the combined effect of Plaintiff's mental and physical impairments, and the potential sedating effects of Plaintiff's potent pain medications, in accord with 42 U.S.C. § 423(d)(2)(b) and *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

-13-